**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**CLARA L. ROSENBURG,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:07-cv-1510-Orl-19DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on review of the Commissioner's denial of Plaintiff's application for a period of disability and disability insurance benefits. For the reasons set forth herein, it is **respectfully recommended** that the administrative decision be **AFFIRMED.**

### *PROCEDURAL HISTORY*

      Plaintiff protectively filed her application for a period of disability and disability insurance benefits on March 31, 2004, alleging an onset date of September 21, 1997 (R. 97-99). Plaintiff's application was denied initially, and Plaintiff requested and received an administrative hearing (R. 509-43). On April 27, 2006, the Administrative Law Judge (herein "the ALJ") issued a decision unfavorable to Plaintiff (R. 10-21). Plaintiff requested review (R. 8-9), but the Appeals Council denied the request (R. 4-6), making the ALJ's decision the final decision of the Commissioner.

      Plaintiff timely filed her Complaint in this Court (Doc. No. 1), and the parties have briefed the matter (Doc. Nos.11, 13), and waived oral argument. The matter is now ripe for resolution.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff alleges disability as of September 21, 1997 (R. 97), due to injuries to her right leg from a motorcycle accident (R.122, 149). In a subsequent disability report, Plaintiff reported that she was also under the care of a psychiatrist (R. 14, 187).

*Summary of Evidence*

As of her onset date, Plaintiff was 46 years of age, with a high school education and past relevant work experience as a waitress and a real estate salesperson (R. 86, 97, 404, 107).

As noted by the Commissioner, in order to be entitled to disability insurance benefits under Title II of the Social Security Act, a claimant must establish that she became disabled on or prior to the expiration of her insured status, or that the disability lasted continuously until at least twelve months prior to her application date. *See* 20 C.F.R. §§ 404.315(a)(3), 404.320(b)(3), 404.621(d) (2007). Plaintiff's insured status for purposes of qualifying for disability insurance benefits expired on June 30, 1998 (R. 100, 102). Thus, the time period at issue is from the date of her alleged onset (September 21, 1997) through the date last insured (June 30, 1998). Although the record contains significant medical evidence, the majority of that evidence post-dates the date last insured by several years. The medical evidence relative to the time period at issue is limited, and set forth in detail in the ALJ's decision and, as necessary, herein.

On September 21, 1997, Plaintiff was a helmeted passenger on a motorcycle when she was struck on the right side by a truck, and sustained a right open tibia-fibula fracture, a posterior displacement of the tibia in relation to the femur, and a 2 c.m. open wound over the proximal tibia of the right lower extremity (R. 527, 252). She was hospitalized through September 29, 1997, and underwent surgery for open reduction and internal fixation of the right tibia-fibula fracture and an

above-the knee and below-the-knee right popliteal bypass with the greater saphenous vein (R. 246).

Upon discharge, Plaintiff continued to be treated by her orthopaedic surgeon, J. Dean Cole, M.D. (R. 291-301). On October 9, 1997 examination, the wound was well healed, a strong pulse was noted and Plaintiff had active dorsiflexion and plantar flexion, although very weak (R. 300). Skin grafting was recommended, and accomplished on October 13, 1997. *Id.* On October 23, 1997 return visit, Plaintiff complained of significant pain and swelling, with some improvement in her range of motion (R. 299). On examination, knee alignment was excellent, and range of motion exercises were recommended. *Id.* On December 18, 1997, Plaintiff complained of continued pain and swelling in the right knee (R. 297). X-rays revealed anatomic alignment of the tibia plateau, and Plaintiff was thought to be doing well with respect to her knee injury. Examination revealed an equinus contracture to the ankle, however, and Plaintiff was instructed to initiate weight bearing and aggressive stretching despite pain. *Id.*

Plaintiff returned to Dr. Cole on January 15, 1998, ambulating and weight bearing utilizing crutches (R. 296). Dr. Cole noted a stiffened equinus contraction with 30 degrees of dorsiflexion, but knee motion had improved from 90 degrees of flexion to 10 degrees of extension. X rays showed further healing with good alignment. Dr. Cole opined that Plaintiff would benefit from right heel cord lengthening and a posterior capsulotomy of the right ankle, due to lack of improvement (R. 296), and Plaintiff underwent same on February 6, 1998 (R. 295). On February 19, 1998 post operative visit, Plaintiff was ambulating with a walker, and her foot and ankle were in the neutral position (R. 294). Her foot was placed in a cast for six weeks in order to maintain the correction.

On April 2, 1998, the cast was removed and Plaintiff was able to stand and ambulate (R. 293). She was instructed to perform quad strengthening exercises and Plaintiff was advised that "full weight

bearing is mandatory trying to restore her walking capabilities." *Id.*  On May 14, 1998, Dr. Cole noted significant edema about the right lower extremity from the mid-thigh level distally and quad weakness, extension lag of the knee and ankle dorsiflexion to neutral (R. 292).  X-rays revealed the fracture was healed and in good anatomic position.  Stretching exercises and the need for continued strengthening was emphasized.

Plaintiff followed up with Dr. Cole on July 21, 1998, and presented ambulatory, with a cane (R. 231).  Dr. Cole noted improvement in Plaintiff's motion, strength and ability to ambulate, and x-rays revealed "excellent healing." (R. 231).  Although Plaintiff had some edema about her calf, Dr. Cole opined that it should gradually decrease with time and revascularization.  He noted that he was "pleased with the patient's follow-up" and opined that Plaintiff "should have functional recovery of the right limb."  *Id*.  Return visit was scheduled for four months hence, but Plaintiff did not keep the appointment. *Id.*  No further visits with Dr. Cole occurred.

As for evidence relating to a mental impairment, during Plaintiff's September 1997 stay in the hospital, she was seen by a staff psychiatrist in consultation because she was having crying spells and insomnia subsequent to her accident (R. 15, 251).  She was diagnosed with "adjustment to injury" with
anxiety and depression, and she was prescribed Paxil and Vistaril.  Plaintiff presents no other records indicating any other mental health treatment until 2002.  Medical records subsequent to 2002 indicate treatment for depression and a panic disorder.

Subsequent medical records from the year 2002 on reveal a history of treatment for a right shoulder injury, bilateral carpal tunnel syndrome, and a back condition (R. 15).  The ALJ noted that the onset of all of these conditions was well after June 30, 1998.

At hearing, Plaintiff testified as to her pain and limitations, and presented the testimony of her neighbor. Additionally, a Vocational Expert appeared and testified. The record also contains numerous assessments from state agency medical consultants and a psychological consultant. After a review and evaluation of the medical evidence in the record, the ALJ found Plaintiff not disabled (R. 12-21).

### *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff raises numerous issues for review, contending that: 1) the ALJ erred in failing to show good cause for rejecting the expert medical opinion of Plaintiff's treating psychiatrist; 2) the ALJ erred in giving more weight to the opinion of a non-examining state agency psychological consultant that to the opinion of the treating psychiatrist; 3) the ALJ failed to state the weight given different medical opinions and the reasons therefor; and 4) the ALJ's finding that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform was not supported by substantial evidence.  The Court addresses the issues, in turn.

**The Five Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Here, the ALJ found that with respect to the applicable time period, Plaintiff established the severe impairment of residuals from status post open reduction and internal fixation of the right tibia-fibula fracture and above the knee to below the knee poplieteal bypass with the greater

saphenous vein, but through the date last insured, she did not have an impairment or combination of impairments that met or medically equaled the Listings (R. 14-15). Plaintiff's first three objections relate to this finding. Specifically, Plaintiff asserts that the ALJ improperly rejected the opinion of Plaintiff's treating psychiatrist and placed too much weight on the opinion of a non-examining consultant.

### Treating Physicians

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the

treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, Plaintiff first presented to Balinder Chahal, M.D., for treatment of depression and panic attacks on May 7, 2004 (R. 469, 495-507). Dr. Chahal diagnosed a Mood Disturbance Disorder, recurrent, and a Panic Disorder (R. 470). On July 23, 2004, Dr. Chahal completed a Medical Assessment of Ability to Do Work Related Activities (Mental), in which he found that Plaintiff had a poor/none ability to deal with the public, deal with work stresses, function independently, maintain attention or concentration, understand, remember or carry out complex job instructions and relate predictably in social situations (R. 495A). Dr. Chahal opined that these psychiatric limitations have existed since Plaintiff was involved in the motorcycle accident in September 1997 (R. 495B).

The ALJ noted Dr. Chahal's opinion, but discounted it as "speculative in nature given the claimant's lack of any documented mental health treatment for several years after the claimant's accident." (R. 15). The ALJ agreed with the opinion of the reviewing state agency psychologist that Plaintiff's mental impairments as of the date last insured were not severe (R. 15). Plaintiff argues this was error in that Dr. Chahal's opinion is entitled to considerable weight and the opinion of a non-examining physician is insufficient to support an administrative decision.

As set forth above, the ALJ can properly discount the opinion of any physician if there is, as here, good cause to do so. As noted by the Commissioner, Dr. Chahal was *not* Plaintiff's treating physician during the time in question. Indeed, she did not present to him until over five years past

her date last insured. In this context, Dr. Chahal's retrospective opinion, which is wholly conclusory and not based on a review of the medical evidence present at the time in question, is not entitled to automatic deference. Further, the reasons offered for discrediting the opinion are supported by substantial evidence. The ALJ noted the lack of any mental health treatment for several years after the date last insured, and the absence of any mention of anxiety or depression in the treatment notes of her treating physician at the time, Dr. Cole. Indeed, in her initial disability report, Plaintiff did not even claim to be disabled due to mental health impairments. The ALJ noted that Plaintiff had emotional support from friends and family during the relevant time period and reported that she got along well with them (R. 15, 218).

The ALJ also cited the opinion of the non-examining state agency consultant, who opined that the impairment was non-severe (R. 15). Plaintiff contends that this opinion is insufficient to support the administrative decision. In this circuit, the reports of reviewing nonexamining physicians without more do not constitute substantial evidence on which to base an administrative decision. *See Spencer o/b/o Spencer v. Heckler*, 765 F.2d 1090 (11th Cir. 1985) (reports of physicians who do not examine claimant, taken alone, do not constitute substantial evidence); *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir.1988) ( "The opinions of nonexamining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight ..."); *Sharfarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir.1987) (accord, also noting that the ALJ must state with particularity the weight she gives to medical opinions and the reasons why).

Here, however, the ALJ's opinion was not dependent *solely* on the report of the consultant; rather, as indicated above, the ALJ specifically noted the lack of any mention of anxiety or depression in the medical treatment records for the applicable time period, the Plaintiff's statements regarding

emotional support from friends and family, and the lone record for mental health issues from the hospital psychiatrist, noting an adjustment to injury. As the consultant's opinion was consistent with the medical records for the time period, as explained by the ALJ, the ALJ did not err in relying upon it.

Plaintiff's third objection, that the ALJ failed to state with particularity the weight he gave the medical opinions, is misplaced. The ALJ set forth the treatment notes with respect to the treating physician for the applicable time period (Dr. Cole) in great detail, and the ALJ's findings are completely consistent with the clinical findings and observations of Dr. Cole, and the only opinion offered by him: that Plaintiff should have functional recovery of the right limb. As for the lone examination by the staff psychiatrist, there was no "opinion" offered. The ALJ did note the examination (R. 15) and concluded that Plaintiff's affective disorder and anxiety disorder were not severe, at step two of the five step evaluation. As explained above, this finding is supported by substantial evidence. Plaintiff fails to identify what "opinion" was not weighed.[1]

Plaintiff's final contention is that the ALJ's conclusion at step five of the analysis, that there existed other work that Plaintiff could perform, was not supported by substantial evidence. This contention, too, fails to persuade.

At hearing, the ALJ asked the VE to consider an individual of Plaintiff's age, education, and prior work experience, who could perform sedentary work, limited to routine, repetitive tasks, no climbing ropes, ladders, scaffolding, but could occasionally balance, stoop, kneel, crouch, crawl, climb stairs and ramps, and could not be exposed to hazards (unprotected heights or dangerous

---

[1] To the extent Plaintiff asserts that the ALJ should have considered opinions set forth in medical records from 2002 onward, the ALJ properly found that these records reflect an onset of conditions well after the date last insured. As such, they are not relevant to the issues presented as they do not purport to reflect on Plaintiff's condition during the relevant time period.

equipment) with no concentrated exposure to extremes of other environmental factors (R. 537). The VE responded that Plaintiff would be able to perform the jobs of an assembler of small products, food and beverage order clerk, and polisher (R. 538-539). Plaintiff contends that she testified as to the need to elevate her leg, and that, when the ALJ specifically asked the VE what impact that need would have, the VE responded that "I think it would seriously hamper an individual's ability to carry out any sedentary work activities, even in the work of a telephone order clerk." (Plaintiff's brief at 19). Plaintiff, however, is selective in her recitation of the administrative record. The *complete* answer given by the VE is as follows:

> Q.  Now, what impact, she testified that she had to elevate her legs above, parallel to the floor, two or three times a day, 20 minutes to a[n] half hour per session. What impact on finding a sedentary job?
>
> A.  In, production work, it is possible and I mentioned assembler and polisher, which are both production work. I, I think it would seriously hamper an individual's ability to carry out any sedentary work activities, even in the work of a telephone order clerk.

(R. 539).

The ALJ must employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Here, however, there is no indication that the ALJ accepted Plaintiff's testimony regarding her need to elevate her leg three times a day. No physician imposed that restriction on Plaintiff, and such a limitation is not included in the ALJ's finding regarding her residual functional capacity.[2] Even assuming that the ALJ credited Plaintiff's testimony, however, the VE opined that Plaintiff could still perform the work of assembler and the work of a polisher. As

---

[2] Indeed, Plaintiff's testimony runs counter to the instructions of her treating physician. Dr. Cole advised that full weight bearing was "mandatory."

-11-

such, substantial evidence supports the ALJ's finding that Plaintiff could perform other work with respect to the time period at issue.

### *CONCLUSION AND RECOMMENDATION*

The administrative decision was made in accordance with proper legal standards and is supported by substantial evidence. As such, it is **respectfully recommended** that it be **AFFIRMED.** Should this recommendation be adopted, the Clerk should enter judgment accordingly and close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 7, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy