UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CLARA L. ROSENBURG,**

        **Plaintiff,**

-vs-                                                **Case No.  6:07-cv-1510-Orl-19DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## ORDER

This case comes before the Court on the Report and Recommendation of the United States Magistrate Judge (Doc. No. 14, filed July 7, 2008) and the Objection of Plaintiff to [the] Magistrate's Report and Recommendation Dated July 7, 2008 (Doc. No. 15, filed July 17, 2008).[1]

### Background

On September 21, 1997, Plaintiff Carla Rosenburg sustained injuries during a motorcycle accident.  (R. at 252, 527.)[2]  On March 31, 2005, she filed an application for a period of disability and disability insurance benefits, alleging the accident as her disability onset date.  (R. at 97-99.) Because Rosenburg was insured through June 30, 1998, she was required to prove that she was disabled, within the meaning of the Social Security Act, on or before that date.  (*See* R. at 12.)  After her hearing, the Administrative Law Judge ("ALJ") issued an opinion that was unfavorable to Rosenburg, finding that she was not disabled during the relevant period because she was capable of

---

[1] The Commissioner did not file a response to Rosenburg's Objection.

[2] Citations to the certified record will be designated as "R. at ___."

performing several sedentary jobs. (R. at 12-21.) The Appeals Council later declined to hear her case. (R. at 4-6.) Her appeal to this Court followed.

The Social Security Administration ("SSA") evaluates applications for disability benefits under a five step process:

> (1) Is the claimant presently unemployed?
> (2) Is the claimant's impairment severe?
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the claimant unable to perform his or her former occupation?
> (5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4). An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability. *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1987). The opinions of treating and consulting physicians are relevant to all but the first step. *See* 20 C.F.R. § 404.1520(a)(4).

The three objections before the Court concern the ALJ's rulings at steps two and five of the process. The facts relevant to each objection are summarized below.

### A.    Dr. Chahal's Opinion

At step two, the ALJ evaluated the severity of two alleged impairments. First, he concluded that Rosenburg suffered from a severe impairment in the form of lingering leg injuries sustained from the motorcycle accident. (R. at 15.) However, he concluded that she did not suffer from a severe mental impairment. (*Id.*) According to the ALJ's factual findings, Rosenburg was evaluated by a psychiatrist several days after her accident in 1997. (*Id.*) At the time, she was diagnosed with having an adjustment disorder with anxiety and depression. (*Id.*) She did not continue to receive mental health treatment upon discharge from the hospital, and the notes of her doctors following the accident do not mention any complaints of anxiety or depression. (*Id.*)

Rosenburg's first reported mental health treatment after the accident occurred in 2002, when she was hospitalized due to suicidal ideation. (*Id.*) She next received treatment in 2004, after a vocational rehabilitation counselor referred her for a psychological evaluation. (*Id.*) The psychologist concluded that Rosenburg had a major depressive disorder, single episode, moderate, and anxiety disorder, not otherwise specified. (R. at 15, 401-406.) In May of 2004, Rosenburg began receiving treatment from Doctor Binder Chahal. (R. at 15.) He diagnosed Rosenburg with major depressive disorder and panic disorder. (R. at 15, 495.) In an assessment submitted on July 23, 2004, Dr. Chahal indicated that the disorders had resulted in a "poor/none" ability to perform numerous mental activities since her accident in September of 1997. (R. at 495.) The assessment consisted of checked boxes on a grid and contained no substantive explanation of his conclusions. (*Id.*) Dr. Chahal did not refer to the notes produced by the psychiatrist who treated Rosenburg immediately after her accident. (*See id.*)

Rosenburg was also evaluated by a consulting agency psychologist, Dr. Deborah Carter Ph.D., on October 11, 2004. (R. at 472.) Dr. Carter concluded that Rosenburg's mental impairments were not severe and her functional limitations were mild during the period between her accident and date last insured. (R. at 472, 482, 484.) Her report contains a one-paragraph explanation indicating that she considered Rosenburg's medical records from 1997 and 1998. (R. at 484.)

The ALJ expressly rejected Dr. Chahal's opinion as "speculative in nature given the claimant's lack of any documented mental health treatment for several years after the claimant's accident." (R. at 15.) The ALJ further adopted the opinion of Dr. Carter, finding that Rosenburg's disorders were not severe impairments. (*Id.*)

In his Report and Recommendation, Magistrate Judge Baker found that the ALJ's rejection of Dr. Chahal's opinion was proper. (Doc. No. 14 at 9.) Specifically, good cause existed to discount the opinion of Dr. Chahal because he was not Rosenburg's treating physician during the "time in question." (*Id.*) Chahal did not treat Rosenburg until five years after the disability's alleged onset, and his opinion was therefore "not entitled to automatic deference." (*Id.*) Further, there was no record of mental health treatment for several years after the date last insured, and the notes of Rosenburg's physicians during that period did not contain any reference to anxiety or depression. (*Id.*)

### B.     Rosenburg's Testimony Regarding Pain

At the hearing, Rosenberg testified that she suffered from chronic, throbbing pain and swelling in her right leg. (R. at 521-24.) She also testified that in 1998 she was able to walk only ten to fifteen yards at a time or stand for five minutes before needing to sit and rest for about five minutes. (R. at 521-23.) She was able to tend to her personal hygiene but could only do limited household chores. (R. at 524-25.) Considering this testimony at step five of the analysis, the ALJ concluded that Rosenburg's impairment could be reasonably expected to produce the reported symptoms. (R. at 17.) However, the ALJ also concluded that her statements "concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (*Id.*) The ALJ based this finding on the notes of a treating physician, Dr. Cole, on the reports of several state agency consultants, and on Rosenburg's failure to seek medical care for several years after July of 1998. (*Id.*)

The ALJ's rejection of Rosenburg's testimony regarding pain was not raised as an issue in Rosenburg's brief before the Magistrate Judge. Consequently, the Magistrate Judge did not address this issue in his Report and Recommendation.

### C. The Testimony of the Vocational Expert

During the fifth step, the ALJ was required to ask hypothetical questions to a vocational expert ("VE") regarding the impact of the claimant's impairments on specific jobs. *See, e.g.*, *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985). In this case, the ALJ asked three hypothetical questions.

In the first hypothetical, the ALJ asked the VE what jobs an individual of Rosenburg's age, education, and work experience could do if she was limited to being able to perform sedentary work. (R. at 537.) In response, the VE opined that the individual could work as an assembler of small products, as a food and beverage clerk, or as a polisher. (R. at 538-39.)

In the second hypothetical, the ALJ asked what would happen if the hypothetical individual was incapable of sustaining a restricted, sedentary residual functional capacity for eight hours per day, forty hours per week. (R. at 539.) The VE responded that the individual would not be able to work. (*Id.*) In the third and final hypothetical, the ALJ asked:

> Q. Now, what impact, she testified that she had to elevate her legs above, parallel to the floor, two or three times a day, 20 minutes to a half hour per session. What impact on finding a sedentary job?
>
> A. In, production work, it is possible and I mentioned assembler and polisher, which are both production work. I, I think it would seriously hamper an individual's ability to carry out any sedentary work activities, even in the work of a telephone order clerk.

(*Id.*)

In his opinion, the ALJ summarized the VE's testimony as follows:

> The expert was asked to take into account the claimant's age, educational background and employment history. The vocational expert testified that assuming the claimant's specific restrictions she was capable of making a vocational adjustment to jobs existing in the national and regional economies. The vocational expert gave the following examples of jobs, nationally/regionally: assembler of small products . . . telephone order clerk . . . and polisher . . . . The vocational expert testified that the occupational evidence he provided was consistent with the occupational information supplied by the *Dictionary of Occupational Titles* . . . .

(R. at 20.) The ALJ then concluded:

> Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(*Id.*)

In her brief before the Magistrate Judge, Rosenburg attacked this conclusion as being unsupported by substantial evidence because the VE testified that Rosenburg's need to lift her legs would seriously hamper her ability to work. (Doc. No. 11 at 17-20.) The Magistrate Judge rejected this argument, finding that "there is no indication that the ALJ accepted Plaintiff's testimony regarding her need to elevate her leg three times a day." (Doc. No. 14 at 11.) The Magistrate Judge further found that "[e]ven assuming that the ALJ credited Plaintiff's testimony, however, the VE opined that Plaintiff could still perform the work of assembler and the work of a polisher." (*Id.* at 11.)

**Standard of Review**

The District Court's review of a final decision by the SSA is limited to determining (1) whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), and (2) whether the ALJ correctly applied the appropriate legal

standards. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Regarding factual findings, the Court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986). Despite the wide scope of review, however, the SSA's factual findings are presumed correct and should be affirmed so long as the findings are supported by substantial evidence, even if the Court finds that the proof preponderates in the opposite direction. *Dyer*, 395 F.3d at 1210. On the other hand, no such presumption attaches to the SSA's legal reasoning, and the Court must reverse if the SSA incorrectly applied the law or failed to provide sufficient reasoning to determine whether it correctly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

A party seeking to challenge the findings in a Report and Recommendation of the United States Magistrate Judge must file "written objections which specifically identify the portions of the proposed findings and recommendation[s] to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)). If a party makes a proper objection, the District Court must conduct a *de novo* review of the portions of the report to which objection is made. *Id.* at 783-84. The District Court may "accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge." *Id.* at 784.

**Analysis**

Rosenburg raises three objections to the Report and Recommendation. First, she argues that the Magistrate Judge failed to apply the Eleventh Circuit's holding in *Boyd v. Heckler*, 704 F.2d 1207 (11th Cir. 1983), and consequently erred by approving the ALJ's decision to discount her

subjective testimony regarding pain. (Doc. No. 15 at 4-5.) Second, Rosenburg argues that Magistrate Judge failed to recognize the ALJ's error in giving "no weight to the retrospective opinion" of a "treating physician." (*Id.* at 5-6.) Finally, Rosenburg claims that the Magistrate Judge and the ALJ misinterpreted testimony by a vocational expert regarding her ability to perform sedentary work. (*Id.* at 6-8.) These grounds for objection will be analyzed below.

**I.      Rosenburg's Subjective Testimony Regarding Pain**

Rosenburg's first argument regarding *Boyd v. Heckler* was not raised in her brief before the Magistrate Judge. Accordingly, the Magistrate Judge did not err by failing to consider it in his Report and Recommendation.[3]

In any event, Rosenburg's reliance on *Boyd* is seriously misplaced. She cites *Boyd* for the proposition that "[e]ven subjective complaints of pain, if credited, standing alone can sustain a finding of disability in certain cases." (Doc. No. 15 at 4 (quoting *Boyd*, 704 F.2d at 1210).) This case, and specifically the proposition for which it is cited, was superseded by statute and then expressly overruled by the Eleventh Circuit. *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991) (describing the evolution of the "pain standard" in the Eleventh Circuit, noting that *Boyd* was

---

[3] Rosenburg cited *Boyd* in her brief before the Magistrate Judge for a proposition unrelated to this argument. (Doc. No. 11 at 10.) She did not make any arguments regarding the ALJ's treatment of her subjective pain testimony. The Eleventh Circuit has determined that district courts may consider issues raised for the first time in an objection to a Report and Recommendation. *Stephens v. Tolbert*, 471 F.3d 1173, 1176-77 (11th Cir. 2006). While several circuits have also found that the district courts have discretion to deem such arguments to be waived, the Eleventh Circuit expressly left this question open in *Stephens*. *Id.* ("We need not decide whether the district court could have declined to consider an argument that had not been presented to the magistrate judge."); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998) (summarizing Second, Third, and Seventh Circuit cases and finding that district courts have discretion to decline hearing arguments that were not raised before the magistrate judge). In this case, the Court will exercise its discretion to consider Rosenburg's newly raised argument.

no longer good law, and summarizing the relevant amendment to 42 U.S.C. § 423(d)(5)(A)). The prevailing case law does not require the ALJ to accept Rosenburg's pain testimony as determinative, and the ALJ correctly discounted the weight of Rosenburg's testimony based on contradictory evidence in the record. (R. at 16-17 (finding that Rosenburg's condition could reasonably be expected to produce the alleged pain, but concluding that her testimony was uncorroborated by medical evidence and was not credible in light of her failure to seek medical care for a lengthy period of time).)

## II.    The Weight Given to Dr. Chahal's Opinion

Rosenburg next assigns error to the way in which the ALJ weighed the opinion of a treating physician. The correct legal standard has been summarized many times by the Eleventh Circuit. According to the case law, an ALJ must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Miller v. Comm'r of Soc. Sec. Admin.*, No. 07-15647, 2008 WL 2186357, at *1 (11th Cir. May 28, 2008); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2)). Good cause has been found where: (1) a doctor's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) where the doctor's opinion was conclusory or inconsistent with his or her own medical records. *Id.*

The Magistrate Judge agreed with the ALJ's rejection of Dr. Chahal's opinion. Rosenburg argues that the "standard applied by the ALJ and recommended for approval by the Report and Recommendation would give no weight to the retrospective opinion of Ms. Rosenburg's treating physician." (Doc. No. 15 at 5.) Again citing to *Boyd*, she contends that the opinion of a physician

who began treatment after the relevant determination date is still entitled to "significant weight." (*Id.*)

Rosenburg again misplaces her reliance on *Boyd*.  Although *Boyd* is still good law for this point, the case is clearly distinguishable.  The Eleventh Circuit's decision explains that the opinion of a treating physician may not be rejected solely by virtue of being retrospective in nature; the opinion must be "considered" just like any other doctor's opinion.  *Boyd*, 704 F.2d at 1211.  However, nothing in *Boyd*, or any other Eleventh Circuit opinion, precludes the ALJ from according the opinion less weight based on good cause.  *See id.*  As explained above, good cause to lessen the weight of a treating physician's opinion can be found where (1) a doctor's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) where the doctor's opinion was conclusory or inconsistent with his or her own medical records.  *Lewis*, 125 F.3d at 1440.

In this case, the ALJ found that the doctor's opinion was "speculative in nature given the claimant's lack of any documented mental health treatment for several years after the claimant's accident."  (R. at 15.)  This conclusion was supported by substantial evidence.  As the ALJ noted, Dr. Chahal's opinion was not based on records of previous mental health treatment.  There was no factual summary accompanying Dr. Chahal's treatment, a consulting state psychologist determined that Rosenburg's disorders were not severe impairments, and there was evidence that Rosenburg had "emotional support from friends and family and got along well with them."  (R. at 15.)  Further, the submitted materials from Dr. Chahal were literally conclusory, consisting of nothing more than checked boxes and illegible handwritten notes.  (R. at 495.)  Thus, in giving less weight to Dr.

Chahal's opinion, the ALJ applied the correct legal standard and made factual findings supported by substantial evidence.[4]

### III.     Testimony of the Vocational Expert

Lastly, Rosenburg contends that the ALJ and Magistrate Judge misinterpreted the testimony of a vocational expert. (Doc. No. 15 at 6-8.) According to Rosenburg, the VE did not testify that Rosenburg could perform certain sedentary jobs. The VE was asked about the impact that Rosenburg's need to occasionally lift her legs would have on performing sedentary work, and she testified "[i]n, production work, it is possible." (R. at 539.) Rosenburg urges that the VE meant it was possible that Rosenburg would be affected by the limitation, not that it was possible Rosenburg could perform sedentary work with the limitation. (Doc. No. 15 at 7.)

In her brief before the Magistrate Judge, Rosenburg argued that the ALJ's conclusion that she could perform sedentary work was not supported by substantial evidence. (Doc. No. 11 at 17-20.) She now takes a slightly different approach, arguing that the ALJ's mistake in interpretation amounted to the application of the wrong legal standard because he never articulated a reason for disregarding the VE's testimony. (Doc. No. 15 at 6-9.)

---

[4]     Rosenburg also argues that the ALJ was required by Social Security Ruling ("SSR") 83-20 to call on a medical advisor to establish her disability onset date. However, the weight of case law counsels that SSR 83-20 is inapplicable to this case. *McManus v. Barnhart*, No. 5:04-CV-67-OC-GRJ, 2004 WL 3316303, at *6 (M.D. Fla. Dec. 14, 2004) (collecting cases from the Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Tenth Circuits). Although the Eleventh Circuit has not opined on the issue, several Circuit Courts of Appeal have found that SSR 83-20 does not apply in cases where the ALJ finds no disability. *Id.* Other Circuit Courts have found that in the case of "slowly progressive" alleged disabilities, the onset date may be relevant to the issue of whether the disability exists, and therefore SSR 83-20 may apply. *Id.* However, as the record makes clear, Rosenburg's injuries were the result of a traumatic accident. Thus, SSR 83-20 does not apply under either interpretation of the rule, and the ALJ did not err by failing to call a medical consultant.

Both lines of argument are unconvincing. Rosenburg claimed at the hearing, without supporting medical documentation, that she needed to elevate her leg three times per day. The ALJ was required to ask hypothetical questions to the VE about Rosenburg's reported limitations. *See, e.g.*, *Pendley*, 767 F.2d at 1562. As previously described, the third question and answer proceeded as follows:

> Q. Now, what impact, she testified that she had to elevate her legs above, parallel to the floor, two or three times a day, 20 minutes to a half hour per session. What impact on finding a sedentary job?
>
> A. In, production work, it is possible and I mentioned assembler and polisher, which are both production work. I, I think it would seriously hamper an individual's ability to carry out any sedentary work activities, even in the work of a telephone order clerk.

(R. at 539.)

The hypothetical context of this question is important. The VE was not stating that Rosenburg was actually "hampered," she was stating that Rosenburg would have been "hampered" if she indeed suffered from the alleged limitation. It appears from the ALJ's decision that he did not accept Rosenburg's contention that she needed to lift her legs three times per day.[5] This purported limitation was not imposed by a doctor, it did not appear in any of the three reports regarding her residual functional capacity, and it was actually contrary to the advice that Dr. Cole gave her. (R. at 293, 360-377.) As the Magistrate Judge concluded, it does not matter whether the VE made a

---

[5] The ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (R. at 20.) Because the VE testified in response to the second and third hypothetical questions that Rosenburg would not be able to work given the hypothetical limitations, the ALJ's conclusion that she could work must be based on the VE's answer to the first hypothetical question. Accordingly, it is reasonable to assume that the ALJ concluded that Rosenburg possessed only the limitations addressed in that question.

hypothetical conclusion that the limitation might "seriously hamper" Rosenburg in a sedentary job, because the ALJ did not conclude that the limitation actually existed.  With the premise of the hypothetical removed, the ALJ was not required to give a reason for rejecting the VE's opinion.  He therefore did not apply the wrong legal standard.[6]

In addition, the ALJ's determination that Rosenburg could perform sedentary work was soundly based on the opinions of her treating physicians, the consulting physicians, and the testimony of the VE.  It was therefore supported by substantial evidence.

### Conclusion

Based on the foregoing, the Court **ADOPTS** the Report and Recommendation of the United States Magistrate Judge (Doc. No. 14, filed July 7, 2008), and **OVERRULES** the Objection of Plaintiff to [the] Magistrate's Report and Recommendation Dated July 7, 2008 (Doc. No. 15, filed July 17, 2008).  The Clerk is directed to enter judgment for Defendant and close the case file.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on September 8, 2008.

---

[6] Rosenburg also argues that the ALJ was required to articulate his reason for rejecting her testimony about her need to lift her legs.  (Doc. No. 15 at 7-8.)  Although it would have been helpful to the reviewing court for the ALJ to expressly reject Rosenburg's testimony on this matter, it is obvious from the opinion that he did not find her testimony to be credible.  *East v. Barnhart*, 197 Fed. Appx. 899, 901 n.3 (11th Cir. 2006) (remand is not required when it is obvious that the ALJ rejected testimony for lack of credibility) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983)).  Earlier in the opinion, the ALJ states that Rosenburg had a tendency to exaggerate symptoms of her condition, and he found that Rosenburg's testimony concerning "the intensity, duration and limiting effects of these symptoms" was not "entirely credible." (R. at 17.)  The ALJ's rejection of Rosenburg's testimony was supported by substantial evidence. For instance, the doctors who prepared the three residual functional capacity reports did not find that Rosenburg needed to lift her legs throughout the day.  (R. at 360-377.)

*[signature]*

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record